IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FACTOR2 MULTIMEDIA SYSTEMS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:25-cv-790 (LMB/WEF) |
| THE UNITED STATES OF AMERICA AS THE | ) |
| UNITED STATES PATENT AND | ) |
| TRADEMARK OFFICE, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This civil action arises out of a dispute between plaintiff Factor2 Multimedia Systems, LLC ("Factor2" or "plaintiff") and the United States Patent and Trademark Office ("PTO") concerning U.S. Patent Nos. 9,870,453 (the "'453 Patent") and 10,083,285 (the "'285 Patent"). Factor2 contends that defendants have violated its Seventh Amendment right to trial by jury and its Fifth Amendment right to due process by proceeding with ex parte reexaminations of the '285 and '453 Patents even though Factor2 has filed suit in the Court of Federal Claims against the United States for infringing those patents. On September 8, 2025, defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was fully briefed by the parties,[1] and which this Court granted after oral argument on February 6, 2026. This Memorandum Opinion expands upon the reasoning for granting defendants' Motion to Dismiss.

I.

According to the Complaint,[2] the PTO issued to Factor2 the '285 and '453 Patents—both of which are titled "Direct Authentication System and Method Via Trusted Authenticators"—in

---

[1] [Dkt. No. 23] ("Defs.' Mem."); [Dkt. No. 25] ("Pl.'s Opp'n"); [Dkt. No. 26] ("Defs.' Reply").

[2] For purposes of considering defendants' Motion to Dismiss, the Court accepts all facts

2018. [Dkt. No. 1] ("Compl.") ¶¶ 1, 28, 31. On March 28, 2024, Factor2 filed a patent infringement action in the Court of Federal Claims against the United States "for the infringement of six patents owned by Factor2," including the '285 and '453 Patents. Id. ¶ 1. Although the Complaint alleges that Factor2 filed its infringement action against the United States "acting through its various federal agencies including, but not limited to, the Department of Commerce and the [PTO]," id., the only defendant named in the Court of Federal Claims action is the United States, [Dkt. No. 1-8]; see 28 U.S.C. § 1498(a) (stating that the remedy for the government's unlicensed use of an invention is an "action against the United States" in the Court of Federal Claims). The litigation in the Court of Federal Claims remains ongoing.

Meanwhile, third party Unified Patents, LLC filed with the PTO requests for ex parte reexaminations of the '285 and '453 Patents.[3] Compl. ¶¶ 2, 6. On September 9, 2024, Factor2 petitioned the PTO to stay reexamination of the '285 Patent,[4] arguing that because Factor2 has an ongoing lawsuit against the United States for infringement of the '285 Patent in the Court of Federal Claims, the PTO has a conflict of interest that requires the reexamination be stayed pending resolution of the infringement action. Id. ¶ 4. According to the Complaint, "[t]he PTO cannot claim impartiality in conducting its reexamination proceedings . . . while that same agency is accused of infringement of the patents in a separate parallel proceeding." Id. ¶ 26.

---

contained within the Complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, the Court may consider the Complaint's attachments without converting the Motion to Dismiss into a motion for summary judgment. Lokhova v. Halper, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020).

[3] "The ex parte reexamination process allows a third party to request that the PTO reexamine a patent on the ground that there is a substantial new question about its patentability." Synopsys, Inc. v. Matal, 280 F. Supp. 3d 823, 825–26 (E.D. Va. 2017) (citing 35 U.S.C. § 302).

[4] The Complaint does not allege that Factor2 made a similar request as to the '453 Patent.

Nonetheless, on February 21, 2025, the PTO dismissed Factor2's petition to stay the '285 Patent's reexamination, finding that "no conflict existed between [the agency's] decision-making ability on the '285 Patent's validity and [its] participation as a party in the action in the Court of Federal Claims." Id. ¶ 7. As a result, both reexamination proceedings remain pending.[5]

On May 7, 2025, Factor2 filed the present suit against the PTO and the Office of Patent Legal Administration arguing that because Factor2 has accused the United States of infringing its patents, the PTO's ex parte reexaminations of the '285 and '453 Patents violate Factor2's Seventh Amendment right to trial by jury (Count I) and Fifth Amendment right to due process (Count II). Specifically, Count I alleges that "[i]n deciding that zero conflict exists between the PTO's defense position in the Court of Federal Claims and its position to unilaterally affect the outcome of said defense through the use of the parallel ex parte reexamination[,] the PTO has undermined separation of powers and has effectively stripped the Court of Federal Claims from its authority to administer its own proceeding and withhold Plaintiff from its right to a trial by jury." Id. ¶ 47. Count II claims that "[i]n deciding that zero conflict exists between the PTO's defense position in the Court of Federal Claims and its position to unilaterally affect the outcome of said defense through use of the parallel ex parte reexamination[,] the PTO has undermined the fairness of the proceeding." Id. ¶ 56. The Complaint requests that this Court enter a declaratory judgment "that the denial of the petition to stay the reexamination of the '285 Patent is unlawful and unconstitutional" and enjoin the PTO from continuing ex parte reexaminations of the '285 and '453 Patents. The Complaint also seeks attorney's fees and costs.

---

[5] Although defendants' Memorandum includes additional information regarding the ex parte reexaminations, see Defs.' Mem. 5–7, that information is not necessary to resolve the Motion to Dismiss.

3

On July 17, 2025, Judge Hilton, who was originally assigned this civil action,[6] denied plaintiff's Motion for a Preliminary Injunction, finding that neither of Factor2's claims are likely to succeed on the merits. [Dkt. No. 16]. Factor2 filed an interlocutory appeal of that order on August 18, 2025. [Dkt. No. 19]. The parties have briefed the appeal, and oral argument has been tentatively scheduled for May 5–8, 2026. On September 8, 2025, defendants filed a Motion to Dismiss, [Dkt. No. 22], and the Court heard oral argument on February 6, 2026. After oral argument, the Court entered an Order granting defendants' Motion to Dismiss and denying plaintiff's requests for a stay and for leave to amend. [Dkt. No. 32].

II.

In considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and take the facts asserted in the complaint as true. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 12(b)(6) requires that a complaint be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must allege enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Iqbal, 556 U.S. at 679).

A.

Although Count I alleges that the PTO's decision to proceed with ex parte reexaminations of the '285 and '453 Patents violates Factor2's Seventh Amendment right to trial

---

[6] Upon Judge Hilton's retirement, this civil action was randomly assigned to the undersigned.

by jury, Compl. ¶ 47, it is not entirely clear what this count alleges. Specifically, it may be alleging that the ex parte reexamination regime violates the Seventh Amendment, or it may be alleging that the PTO's decision to proceed with ex parte reexaminations of the '285 and '453 Patents deprives Factor2 of its right to trial by jury in its patent infringement action against the United States in the Court of Federal Claims.

To the extent Factor2 is claiming that the ex parte reexamination regime violates the Seventh Amendment, defendants have correctly responded that the Supreme Court and Federal Circuit have made clear that patent rights are public rights, the adjudication of which Congress can properly assign to an administrative agency without offending the Seventh Amendment. Defs.' Mem. 8–9. "By its text, the Seventh Amendment guarantees that in '[s]uits at common law, . . . the right of trial by jury shall be preserved.'" SEC v. Jarkesy, 603 U.S. 109, 122 (2024) (quoting U.S. CONST. amend. VII). But there is an important limitation: The Seventh Amendment "protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 n.4 (1989). If a cause of action involves a "public right," Congress may assign adjudication of that claim to a non-Article III adjudicative body without violating the Seventh Amendment's right to trial by jury. Id. at 51.

In Oil States Energy Services, LLC v. Greene's Energy Group, LLC, the Supreme Court held that the Patent Trial and Appeal Board's inter partes review process "falls squarely within the public-rights doctrine," explaining:

> [T]he decision to grant a patent is a matter involving public rights—specifically, the grant of a public franchise. Inter partes review is simply a reconsideration of that grant, and Congress has permissibly reserved the PTO's authority to conduct that reconsideration. Thus, the PTO can do so without violating Article III.

5

584 U.S. 325, 334–35 (2018). The Supreme Court further explained that "when Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" Id. at 345 (quoting Granfinanciera, 492 U.S. at 53–54). "Because inter partes review is a matter that Congress can properly assign to the PTO, a jury is not necessary." Id.

Using similar logic, the Federal Circuit has long recognized that the ex parte reexamination regime does not offend the Seventh Amendment. For instance, in Patlex Corp. v. Mossinghoff, a patentee challenged the constitutionality of ex parte reexamination, arguing that "he [was] deprived of the right to have validity determined by a jury and an Article III court." 758 F.2d 594, 603 (Fed. Cir. 1985). The Federal Circuit rejected the patentee's Seventh Amendment challenge, holding that "the grant of a valid patent is primarily a public concern" and "[t]he reexamination statute's purpose is to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted." Id. at 604. Similarly, in Joy Technologies, Inc. v. Manbeck, the Federal Circuit rejected a patentee's challenge to ex parte reexamination, affirming that "cases involving 'public rights' may constitutionally be adjudicated by . . . administrative agencies without implicating the Seventh Amendment." 959 F.2d 226, 228 (Fed. Cir. 1992); see MCM Portfolio LLC v. Hewlett-Packard Co., 812 F.3d 1284, 1293 (Fed. Cir. 2015) ("Because patent rights are public rights, and their validity susceptible to review by an administrative agency, the Seventh Amendment poses no barrier to agency adjudication without a jury."). Given this body of case law, any claim by Factor2 that the ex parte reexamination regime violates the Seventh Amendment fails.

Alternatively, to the extent Factor2 is claiming in Count I that the PTO's decision to continue with ex parte reexaminations of the '285 and '453 Patents deprives Factor2 of its right to trial by jury in its infringement action against the United States, this claim fails because there is no provision for jury trials in the Court of Federal Claims.[7] As to this version of Count I, defendants contend that because Factor2 filed its infringement action against the federal government pursuant to 28 U.S.C. § 1498(a),[8] it is not entitled to "a jury trial on the validity of its asserted patents in its patent infringement suit." Defs.' Mem. 10. Factor2 does not address this argument in its opposition. See Pl.'s Opp'n 4–6.

Defendants are plainly correct. "Unlike in patent infringement litigation between private parties, there are no juries in § 1498(a) actions where the federal government is the defendant." Am. Innotek, Inc. v. United States, 113 Fed. Cl. 668, 675 n.3 (2013); see Return Mail, Inc. v. U.S. Postal Serv., 587 U.S. 618, 634 (2019) ("[T]he Government is . . . in a unique position

---

[7] This interpretation of Count I is more plausible given plaintiff's assertion in its opposition that "no challenge to the underlying constitutionality of the statutes or administrative procedures is being asserted." Pl.'s Opp'n 8.

[8] 28 U.S.C. § 1498(a) provides:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. Reasonable and entire compensation shall include the owner's reasonable costs, including reasonable fees for expert witnesses and attorneys, in pursuing the action if the owner is an independent inventor, a nonprofit organization, or an entity that had no more than 500 employees at any time during the 5-year period preceding the use or manufacture of the patented invention by or for the United States. Nothwithstanding [sic] the preceding sentences, unless the action has been pending for more than 10 years from the time of filing to the time that the owner applies for such costs and fees, reasonable and entire compensation shall not include such costs and fees if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

among alleged infringers given that 28 U.S.C. § 1498 limits patent owners to bench trials before the Court of Federal Claims."). Because Factor2 has named the United States as the defendant in its infringement action, see [Dkt. No. 1-8], Factor2 does not have a right to trial by jury in that suit. Therefore, the PTO's ex parte reexamination of Factor2's patents does not deprive Factor2 of its right to trial by jury in its patent infringement action because Factor2 does not have such a right. For all these reasons, Count I has been dismissed.

B.

Count II alleges that "[t]he close relationship between the PTO's ex parte reexam[ination] and the issues in the Court of Federal Claims action make it impossible for the PTO examiner's office to convey the image of being an impartial fact finder." Compl. ¶ 55. According to plaintiff, "[i]n deciding that zero conflict exists between the PTO's defense position in the Court of Federal Claims action and its position to unilaterally affect the outcome of said defense through use of the parallel ex parte reexamination[,] the PTO has undermined the fairness of the proceeding." Id. ¶ 56.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth Amendment. Mathews v. Eldrige, 424 U.S. 319, 332 (1976). Relevant here, "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities," Schweiker v. McClure, 456 U.S. 188, 195 (1982); however, "not all claims of bias rise to a constitutional level," Rowsey v. Lee, 327 F.3d 335, 341 (4th Cir. 2003). Rather, "[a]n interest is disqualifying when the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable." Withrow v. Larkin, 421 U.S. 35, 47 (1975). Put differently, "actual bias or a high probability of bias must be present before due process concerns

are raised." Marshall v. Cuomo, 192 F.3d 473, 484 (4th Cir. 1999). "The burden of establishing a disqualifying interest rests on the party making the assertion." Schweiker, 456 U.S. at 196.

Defendants argue that Factor2 has not alleged that the PTO has any cognizable bias or interest in the infringement action that could give rise to constitutional concerns. Defs.' Mem. 13–15. First, defendants correctly point out that the United States—not the PTO—is the only party named as a defendant in the infringement action before the Court of Federal Claims. [Dkt. No. 1-8]; 28 U.S.C. § 1498(a) (stating that the remedy for the government's unlicensed use of an invention is an action "against the United States" in the Court of Federal Claims). Moreover, it is typical for the PTO to participate in proceedings in which the United States has an interest in the outcome. For instance, federal officers may apply for patents in the name of the United States, Return Mail, 587 U.S. at 632; federal agencies may request ex parte reexamination of a patent, id. at 633; and private parties may challenge the validity of patents held by federal agencies, see Gilead Scis., Inc. v. United States, 163 Fed. Cl. 104, 118 (2022). Plaintiff responds by arguing that "none of those circumstances are present here," Pl.'s Opp'n 4; however, this response misses the mark because it does not explain how the bias allegedly involved in ex parte reexamination proceedings during a pending infringement action against the United States would not also be present in other PTO procedures and functions that examine, reconsider, and adjudicate the United States's patent rights.

Second, defendants contend that the PTO and its employees do not have a significant pecuniary interest in the outcome of Factor2's patent infringement action against the United States such that its interest would affect the agency's ex parte reexaminations of the '285 and '453 Patents. Defs.' Mem. 13. For one, defendants point out that if the United States loses the

infringement action, the damages award will be paid out of a judgment fund.[9] 112 Genesee St., LLC v. United States, 172 Fed. Cl. 426, 448 (2024). Moreover, defendants argue that because Congress appropriates funds to the PTO, Mobility Workx, LLC v. Unified Pats., LLC, 15 F.4th 1146, 1154 (Fed. Cir. 2021), there is no indication that the PTO's budget—or the salary of any individual PTO employee—would be negatively impacted by a single patent infringement damages award. See Del. Riverkeeper Network v. Fed. Energy Regul. Comm'n, 895 F.3d 102, 112 (D.C. Cir. 2018) (finding no due process violation where Congress sets the Federal Energy Regulatory Commission's annual appropriation). Plaintiff responds by arguing that defendants have "only den[ied] that the conflict matters," not that the conflict exists, Pl.'s Opp'n 5; however, this argument ignores binding Supreme Court precedent, which instructs that that a decisionmaker's "remote, trifling, and insignificant" interest in the outcome of a proceeding does not constitute a due process violation, Tumey v. Ohio, 273 U.S. 510, 531 (1927) (citation omitted). For these reasons, any interest the PTO may have in Factor2's infringement action against the United States is either nonexistent or too remote to raise constitutional concerns.

Third, as defendants correctly argue, Factor2's claim that the ex parte reexamination proceedings will "unilaterally affect the outcome" of the infringement action is false.[10] Defs.' Mem. 14 (quoting Compl. ¶ 56). If Factor2 is dissatisfied with the outcome of the ex parte reexaminations, it may appeal the examiner's decision to the Patent Trial and Appeal Board, 35 U.S.C. § 134(b), and then, if still unsuccessful, to the Federal Circuit, id. § 141(b), which will

---

[9] 28 U.S.C. § 2517(a) provides that "every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor, on presentation to the Secretary of the Treasury of a certification of the judgment by the clerk and chief judge of the court."

[10] Plaintiff does not respond to this argument in its opposition.

10

conduct de novo review of any ex parte reexamination, see In re Swanson, 540 F.3d 1368, 1381 (Fed. Cir. 2008) ("[T]he ultimate question of whether the reexamination is based on a substantial new question of patentability . . . remains a question of law, which we review de novo."). Plaintiff has not argued that the Federal Circuit, as part of the federal judiciary, would have any conflict of interest, and the Federal Circuit's review would afford plaintiff access to an Article III court's determination regarding the validity of the patents at issue.

Even assuming arguendo that Factor2 has alleged a cognizable disqualifying interest that rises to a constitutional level, defendants correctly assert that Factor2's due process claim must be dismissed under the rule of necessity. Defs.' Mem. 16. "When the only tribunal that has the authority to decide a particular dispute is in some way tainted, the rule of necessity requires that the tribunal hear the dispute anyway. Patterson v. Ramsey, 413 F. Supp. 523, 542 (D. Md. 1976), aff'd, 552 F.2d 117 (4th Cir. 1977). The PTO is the only agency that has the authority to conduct ex parte reexamination proceedings. Therefore, even if the PTO were tainted in the ex parte reexaminations of the '285 and '453 Patents, the PTO must "hear the dispute anyway." Id. In its opposition, plaintiff contends that the district courts "also have the authority to decide patent validity and inaddition [sic] have broader jurisdiction to consider a wider range of prior art and to also consider patent eligibility," Pl.'s Opp'n 7 (citing 35 U.S.C. § 101); however, as defendants persuasively respond, although district courts have jurisdiction to address the validity of a patent, the PTO is the only tribunal with authority to conduct ex parte reexamination proceedings. Defs.' Reply 5. Because Factor2's claims focus solely on whether the PTO may continue its ex parte reexaminations of the '285 and '453 Patents, the rule of necessity requires that the PTO continue with the reexaminations. For all these reasons, Count II has been dismissed.

III.

In its opposition, Factor2 raises two alternatives to dismissal. First, it seeks a stay pending its appeal of the order denying its motion for a preliminary injunction. Pl.'s Opp'n 7. In their reply to the request for a stay, defendants argue that the Court should deny this request because Factor2 has failed to satisfy its burden of demonstrating that a stay is appropriate. Defs.' Reply 5–6.

The filing of an appeal from an order denying a motion for a preliminary injunction "does not divest the district court with jurisdiction to proceed with respect to matters not involved in the appeal." Doe v. ABA Accredited Univ., 2022 WL 19574049, at *1 (E.D. Va. Oct. 24, 2022), aff'd, 2023 WL 3051826 (4th Cir. Apr. 24, 2023). Rather, the decision of whether to stay a case "lies within the sound discretion of the court to control its docket." Fisher v. United States, 2013 WL 6074076, at *4 (E.D. Va. Nov. 18, 2013) (citation omitted). "In considering a motion to stay . . . a district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; (3) potential prejudice to the non-moving party.'" Sehler v. Prospect Mortg., LLC, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) (quoting Johnson v. DePuy Orthopaedics, Inc., 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012)). "[T]he burden of showing the necessity for a stay rests with the moving party." Int'l Refugee Assistance Project v. Trump, 323 F. Supp. 3d 726, 731 (D. Md. 2018).

Factor2's arguments primarily relate to judicial economy. Specifically, Factor2 is concerned that the Court's ruling on defendants' Motion to Dismiss could conflict with the Fourth Circuit's consideration of likelihood of success on the merits of Factor2's claims and "would not be in the interest of judicial efficiency" because "[a] dismissal of this matter now . . . would simply result in a second parallel appeal of the same issues to the Fourth Circuit,

12

a further loss of judicial efficiency." Pl.'s Opp'n 7–8. Although defendants do not respond directly to Factor2's judicial economy arguments, courts in the Fourth Circuit have found similar arguments to be too speculative to warrant a stay. For instance, in J.R. v. Walgreens Boots Alliance, Inc., plaintiffs appealed the district court's denial of their motion for a preliminary injunction and, although defendant had filed a motion to dismiss, plaintiffs requested a stay "because critical issues on appeal overlap[ped] with issues before the court in [the] pending motion to dismiss." 2019 WL 11638534, at *1 (D.S.C. Nov. 19, 2019). The court denied the plaintiffs' stay request, explaining that any concern about judicial economy is "too speculative" given that "the Fourth Circuit could affirm or reverse the court's ruling without any substantive discussion of the likelihood of success on the merits." Id. at *2. The same could occur in this civil action. Because the Fourth Circuit "may or may not consider the likelihood of success on the merits" of Factor2's claims, and because "the Fourth Circuit's ruling on that issue may or may not impact" the Court's ruling on the Motion to Dismiss, the interests of judicial economy are "simply too unpredictable for a stay to be warranted." Id.

As to the remaining two factors, Factor2 does not argue that it would face hardship, inequity, or prejudice if the Court denies its request. See Pl.'s Opp'n 7–8. Nor could it. "[D]enying a stay in this case would simply require [Factor2] to continue litigating a case that [it] filed concurrently with an interlocutory appeal that [it] filed, which is not an unusual posture in litigation." J.R., 2019 WL 11638534, at *2. Moreover, a delay in the resolution of this litigation could cause prejudice to both parties, particularly given that Factor2 challenges ex parte reexaminations that are currently pending before the PTO. For these reasons, Factor2's request for a stay has been denied.

Factor2 also requests leave to file an amended complaint. Pl.'s Opp'n 8. Plaintiff's argument as to why the Court should grant leave to amend is brief:

> Plaintiff does not seek this alternative relief as a general request but sets forth specific changes, based upon the Defendants' misreading of the cause of action as set forth above, to clearly establish teh [sic] basis for teh [sic] alleged violation of the Plaintiff's rights and to clarify that no challenge to the underlying constitutionality of the statutes or administrative procedures is being asserted.

Id. In open court, plaintiff's counsel admitted that the proposed amended complaint would not include any new legal theories but would simply add more clarifying facts.

A court may deny a motion for leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). To allow the court to determine whether an amendment would be futile, "a copy of the proposed amended pleading . . . must be attached to the motion." Sanford v. City of Franklin, 2022 WL 4451332, at *7 (E.D. Va. Sept. 23, 2022) (quoting Williams v. Wilkerson, 90 F.R.D. 168, 170 (E.D. Va. 1981)), aff'd, 2023 WL 6567884 (4th Cir. Oct. 10, 2023).

Defendants argue that the Court should deny this request because although Factor2 represents that it has "set[] forth specific changes," it has neither provided a proposed amended complaint nor identified potential changes. Defs.' Reply 6. According to defendants, absent this information, the Court cannot assess whether the proposed amendments would be futile. Defendants are correct. It is a "'general rule of practice' in the Eastern District of Virginia that 'when plaintiff seeks leave to amend his complaint under [Federal Rule of Civil Procedure] 15(a) . . . a copy of the proposed amended pleading . . . must be attached to the motion.'" Aleron Grp., LLC v. Ferguson, 2023 WL 5688205, at *4 (E.D. Va. Aug. 4, 2023) (quoting Williams, 90 F.R.D. at 170). Additionally, because Factor2's oral explanation demonstrates that none of the

legal defects in its Complaint would be resolved through amendment, this request has been denied because amendment would be futile.

## IV.

For the reasons stated in open court and in this Memorandum Opinion, defendants' Motion to Dismiss has been granted, and plaintiff's requests for a stay and for leave to file an amended complaint have been denied.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 17 day of February, 2026.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge